OGDEN and RYERSON, Justices, concurred.

AFFIRMED, 3 *Dutch.* 637.

---

DEN, ex dem. ADRIAN VAN BLARCOM et al., *vs.* WALLING KIP and HENRY I. KIP.

1. Where boundaries of a tract of land are defined in the original patent, and the land afterwards passes through successive transfers, without any description by metes and bounds, the boundary lines will be presumed to remain as fixed by the original title.

2. Where a suit is brought to recover possession of land, and a boundary line is the question in controversy, admissions of those occupying the premises and claiming by adverse possession, or of their grantors, admitting that they hold under the plaintiff, are competent evidence to show the extent of the plaintiff's occupancy, his true boundary, and, consequently, his title to the premises.

3. If a party enter into possession of land under a contract to purchase, and pay the purchase money, his possession is adverse, and if continued twenty years, will be a bar to the legal title of the vendor.

4. But where a party takes possession of land under a parol lease, at a fixed annual rent, if he continues in possession after the expiration of his lease, he will be a tenant at will, and such an estate will not be subject to a fee farm rent, neither can it be converted into a freehold estate by making improvements on the premises.

5. Whatever rights the tenant in such case may have against his landlord for improvements on the land, or otherwise, they will not impair the relation of landlord and tenant, or change the nature of the tenant's estate; nor can the rights of the tenant, under the contract, be set up by a party who claims by title adverse to the landlord's, and denies the existence of the tenancy, in opposition to the plaintiff's action.

6. To sustain a verdict, it is not necessary that the weight of evidence

Van Blarcom v. Kip.

should be with it; it is sufficient if it appears that the verdict is not against the decided weight of evidence, and the court will not set a verdict aside, unless satisfied it is against the right.

7. A judgment in an action of ejectment was not conclusive upon the rights of the parties, where the suit was commenced previous to the act of March 17th, 1857.

An action of ejectment was brought in this court, by Adrian Van Blarcom and others, against Walling Kip and Henry I. Kip, to recover possession of certain premises in the county of Passaic. The case was tried at the Passaic Circuit, before a jury, and a verdict rendered for the plaintiffs, and judgment entered thereon. The cause was removed to the Court of Errors and Appeals; the judgment was there reversed, and the record remitted to this court, with directions to award a *venire de novo.* 4 *Zab.* 854. It was again tried at the Passaic Circuit, at December Term, 1855, and a verdict rendered for the plaintiffs. On the return of the *postea* to this court, the defendants moved to set aside the verdict, and for a new trial, on the ground that the verdict was contrary to, and against the weight of evidence, and contrary to law and the charge of the court, and also on the ground that the charge of the court was erroneous.

The facts necessary for an understanding of the case, appear in the opinion delivered in this court.

Argued, November Term, 1856, before the CHIEF JUSTICE, and Justices OGDEN, RYERSON, and VREDENBURGH.

*Whitehead* and *Zabriskie,* for the motion.

*A. S.* and *W. Pennington, contra.*

The CHIEF JUSTICE delivered the opinion of the court.

This action is brought to recover possession of a wharf and lot of land, lying upon the west bank of the Passaic river, at Acquackanonck, in the county of Passaic. In sup-

Van Blarcom v. Kip.

port of his title to the premises in question, the plaintiff showed title to a farm of two hundred acres lying west of the river, the eastern boundary of which the plaintiff insists is upon the river. It is in evidence that the north and south lines of the farm, which run toward the river, if extended to the river, will include the lot in question. If the plaintiff's farm extends to the river he shows title to the premises in question. But the defendant insists that the eastern boundary of the farm is not upon the river, but upon a highway which runs nearly parallel with the river a short distance from the shore. This presents the first question in the cause. Does the farm, the title and possession of which is unquestionably in the lessors of the plaintiff, include the premises in question? The lessors of the plaintiff deduced title from Garret Van Wagoner, who, by will dated July 17th, 1769, devised the farm to his son, Harmonus, who by will, dated August 21st, 1789, devised to his son, Ruliff Van Wagoner, who died intestate on the 30th of June, 1816, leaving his grandson, John Van Wagoner, his heir-at-law, who died on the 21st of February, 1838, having devised the farm to his mother, Jane, under whom the lessors of the plaintiff claim title. The title, through a period of seventy years and through five successive transfers, passed only by descent or devise. There was during that period no conveyance of the land by deed, and no description of the boundaries of the farm. Nor do I find among the mass of ancient documentary evidence any deed or muniment of title that gives the boundaries of the plaintiff's farm. The deed from Hessel Petersee to Garret Van Wagoner, dated the 19th of March, 1747–8, is manifestly for a different tract. The description cannot apply to the plaintiff's land. So the ancient survey and map of Hessel Petersee's two hundred acres, made by Jan Ver Kercke, in 1713, (admitting them to be competent evidence) do not answer the description of the plaintiff's farm. That tract is bounded on the north by lands of Post, and on the south

by lands of Vreeland, whereas the plaintiff's tract is clearly shown, from the time of its original location, to have been bounded on the south by lands of Post, and on the north by the church lot. These documents must be laid out of view as irrelevant, and it must be conceded that the lessors of the plaintiff offered in evidence no ancient documentary title which, by the terms of its description, carried the eastern boundary of their farm to the Passaic river.

The plaintiff, however, offered in evidence an original patent from the proprietors of East New Jersey to Hans Dederick, Garret Garretsee, Walling Jacobs, and eleven others, bearing date the 15th of March, 1684, which included the farm in question. The tract is described as running from the northernmost boundary of the town of Newark along the Passaic river, to the great falls thereof. Twenty-eight hundred acres of this tract were subsequently divided, by deed of partition, among the fourteen original patentees, into twenty-eight lots, of one hundred acres each. Most, if not all, were laid off in farms of two hundred acres, each fronting east upon the Passaic river, and having their north and south boundaries parallel with the north and south boundaries of the plaintiff's farm. The plaintiff's farm was the most northern of these shares, the other tracts adjoining it and each other on the south. The deed of partition was not in evidence, but it was proved that the adjoining shares, as well as the original patent itself, bounded on the river. Anciently a road ran across these shares along the margin of the river. As it approached the northern boundary of the plaintiff's farm it diverged from the river, leaving a narrow strip of land between the road and the shore. Upon that strip, and in the most northeastern angle of what is claimed to be the plaintiff's farm, the wharf in question is erected. In 1812, owing, as was stated in evidence, to the fact that the old road was sometimes covered by the overflow of the river, a new road was opened further from the river, crossing

Van Blarcom v. Kip.

the south line of the plaintiff some distance west of the old road, and further from the river, but gradually approaching it, till the two roads intersect at or near the north boundary of the plaintiff's farm. The old road across the plaintiff's farm was never vacated. Prior to the laying out of the new road, it was in evidence that the enclosed land of the plaintiff extended to the old road near the river, and that the land on the west of the road was in the occupancy and enjoyment of the owner of the farm. East of the road there was, beside the wharf now in dispute, a watering place for cattle, to which a lane led, for the convenience of the cattle upon the plaintiff's farm, a bleaching ground, and at a later period a wharf, connected with the plaintiff's farm. It was also in evidence that the adjoining tracts bounded on the north and south lines of the plaintiff's farm to the river. There was no evidence that the land lying east of the old road upon the margin of the river was worth enclosing, or that it could have been used more beneficially to the farm in any other way than that in which it was used. About the year 1800, attempts were made by John R. Ludlow and by Abraham Ackerman to acquire title to the strip of land in front of the plaintiff's farm between the old road and the river. Releases were taken from various persons of their claim to this land ; but so far as appears, the grantors had no pretence of title. These documents in nowise impair the plaintiff's claim. The land clearly was not vacant. It was included in the original patent under which the plaintiff claimed. There is no evidence that any of the grantors of these rights claimed under the patent, or that any part of the tract included in the patent passed from the patentees to any other than the owners of the plaintiff's farm, The mere location of a boundary is matter *in pais*, and upon the evidence in the cause the jury were fully warranted in finding that the plaintiff's farm extended to, and was bounded upon the Passaic river. Any other conclusion would be against the decided weight of evidence

in the cause. The suggestion of counsel upon the argument, that the river front of this farm was reserved in the original deed of partition as a public watering place, derives no countenance from the evidence. It is scarcely credible that among a population so stationary there should not only have been no claim of so important a right, but no trace whatever, by tradition or common repute, of its existence.

It is further insisted that the verdict is against the weight of evidence offered in support of the *defendants'* title. The defendants claim title under a deed from the surviving executors of Abraham Ackerman to their father, John Kip, bearing date on the 5th of May, 1830. Admitting that the possession of the defendants and those under whom they claim title has been, since the date of that deed, or ever since the death of Abraham Ackerman, clearly adverse, it will not operate to bar the plaintiff's claim. At the death of Abraham Ackerman, John Van Wagoner, who then held the title to the plaintiff's farm, was an infant. He did not attain his majority until 1836. It was necessary, therefore, for the defendants so show title in Abraham Ackerman, either by deed or by possession adverse to the claim of Ruliff Van Wagoner. They attempted both. But it is not understood that any reliance is placed by the defendants' counsel upon the documentary title of Abraham Ackerman, except so far as it may strengthen their claim by adverse enjoyment. It is obvious that if the title and possession of Ruliff Van Wagoner extended to the river, the deeds from Sip and from Vreeland and Spear to Ackerman were utterly void. The grantors had neither title nor possession. Nothing could pass by the deed. If, therefore, the defendants have title, it was acquired solely by adverse enjoyment. And the whole controversy is reduced to the simple question, whether the possession of Abraham Ackerman was hostile to the title of Ruliff Van Wagoner. In regard to all that part of the premises in dispute lying west of the old

road, there is no reasonable ground for controversy. The occupancy of this part of the property by the defendants has been of recent date. The buildings of the defendants have been erected upon ground which was clearly covered by the title and possession of Van Wagoner.

In regard to that part of the property lying east of the old road, including the wharf, more difficulty exists. It is shown that Abraham Ackerman built the wharf in question prior to 1796, and that he continued in possession, by himself or his tenants, down till the time of his death, in 1828. It is proved, by numerous witnesses, that he used and rented the wharf, in connection with an adjoining wharf and store of his own, for the convenience of his mercantile business, and that he had the sole and exclusive possession of the property during all this period, claiming and using it as his own. The evidence upon this point is very strong.

On the other hand, evidence was introduced, on the part of the plaintiff, tending to prove that the dock in question was built upon the land of Van Wagoner by his consent; that Ackerman applied to Van Wagoner, and obtained from him the privilege of building it; that Van Wagoner was to have the privilege of loading his hay and piling his wood upon the wharf, and that he did so use it at his pleasure in common with Ackerman; that on one occasion a dispute arose between them respecting the use of the dock; that Ackerman then offered to buy the dock, and Van Wagoner claimed rent for the time that Ackerman had used it. This evidence rests mainly upon the testimony of John L. Wessels and Jane Shelp; the former, a man of seventy years of age, testifying to a transaction that occurred nearly sixty years before; and the latter, nearly related to the plaintiff, and testifying, also, to a conversation which occurred thirty years before the trial. The evidence is certainly far from satisfactory, and if the plaintiff's case rested upon their unsupported testimony, it would be difficult to sustain the verdict, as being

against the weight of testimony. But the weight of the plaintiff's case does not rest upon this parol testimony alone. It is, indeed, hardly credible that a jury would have overturned a quiet uninterrupted possession of nearly sixty years upon such evidence alone. And I cannot resist the impression that the verdict of the jury will be found to rest upon much more tenable and satisfactory ground.

The verdict, I think, derives its main support from the nature and situation of this property, its relation to the plaintiff's farm, and from the nature of the defendants' possession. As has been already said, in 1684, upon the original settlement of the country, a large tract of land, of which the plaintiff's farm was a part, was conveyed to a company of Hollanders. A large part of the tract was partitioned among them, in such manner that each farm should have a front upon the river. It was settled, and has been held by them, and those holding under them, with the proverbial tenacity of the race. It was proved on the trial, by John A. Post, that his ancestor was one of the original patentees and first settlers, and that the adjoining farm to the plaintiff's had continued in the possession of the family down to the time of the trial. It does not appear that the plaintiff's farm had ever been conveyed by deed from the time of the original partition. It was owned by an ancestor of Ruliff Van Wagoner prior to 1769, and continued in the family till the family itself was extinct, the last of the race having devised it to his mother and her children by a former husband. It was held and used for agricultural purposes only. For this purpose, the frontage of the farm upon the river and its convenience of access to the river were invaluable. There is no probability that any part of it was ever willingly parted with by Ruliff Van Wagoner. The fact that he permitted the wharf to be erected by Ackerman in front of his farm, was used by counsel upon the argument with great power in support of his theory, that Ruliff Van

Wagoner knew that he had no title to the land upon the river. But the jury have found that Ruliff Van Wagoner's title did reach the river, and covered the spot where the wharf was erected ; and now is not the argument equally strong, that the possession of Ackerman was not hostile, and that he did not claim title as against Van Wagoner? It is in evidence that this wharf was built and occupied by Ackerman under the eye of Van Wagoner, in sight of his dwelling, almost within call from his door-stone. Is it likely that Van Wagoner would voluntarily have permitted hostile occupancy to have been taken of any part of his farm ? Is it probable that a man who never parted with a foot of his farm by alienation would have suffered the title to his river front to be stripped from him by adverse enjoyment ? On the other hand, is it not highly probable that he would have suffered a neighbor to have occupied that land in subserviency to his own title? To Ruliff Van Wagoner, this river front was valuable only as appurtenant to his farm. He was not engaged in commerce, nor was he a speculator in land. The narrow strip between the road and the river would have been of no value for agriculture. It does not appear ever to have been enclosed. It was open to the public. The mere construction of a wharf upon a part of that front could have been of no possible prejudice to Ruliff Van Wagoner, and no interference with the beneficial enjoyment of his rights. On the contrary, it was a positive convenience and benefit to the farm, and at the same time a great advantage to the adjoining proprietor, who built and used it for the purposes of commerce. Every reasonable presumption, therefore, is in favor of the occupancy of this wharf by Ackerman, in subserviency to the title of Van Wagoner and against the idea of adverse possession, and this view of the case is greatly strengthened by the defendant's own evidence. It is proved, by more than one of their witnesses, that Ackerman and his tenants occupied not only the wharf to which the defendants claim title, but

nearly the whole river front of Van Wagoner's farm, including Anderson and Post's dock, which is proved to be a part of the farm. It is not necessary that these considerations should lead to the conclusion that the weight of evidence is with the verdict. It is enough if it appears that the verdict is not against the decided weight of evidence.

It must be borne in mind that two verdicts have been rendered in favor of the plaintiff upon this issue. It is true that the first verdict was not set aside, but the judgment rendered upon it was reversed for an error in the charge of the court. But that charge could not have misled the jury upon the main point at issue, the question of adverse enjoyment. The plaintiff, therefore, upon this application is entitled to the weight of two verdicts having been rendered in his favor. The last trial was had, with great deliberation, by a struck jury. The judgment in ejectment, the action having been commenced before the existing law went into operation, will not be conclusive upon the rights of the parties. Under these circumstances, it should be a very strong case to warrant the granting of a new trial. The court should be satisfied that the verdict is against the right. I am not so satisfied, and am, therefore, of opinion that on this ground the verdict should not be set aside.

It is further assigned, as a ground for a new trial, that the court erred in the charge to the jury.

1. In refusing to charge, as requested, " that unless the plaintiffs show title in themselves, parol declarations of the defendant's grantors, that they held under the plaintiffs, cannot be evidence to show title." The real question before the jury was not so much a question of title as a question of location or boundary. The plaintiffs proved an indisputable title to their farm, and the only question at issue was, did the farm bound upon the river, or upon the road near the river; and upon this issue it was a material question, how far Van Wagoner's occupancy and claim

of title extended. And acknowledgments by those under whom the defendants claimed, and who occupied the land between the road and the river, that they held under the plaintiffs, was competent and material to show the extent of the plaintiff's occupancy, the true boundary of his farm, and consequently his title to the premises in dispute. The acknowledgments of the defendants' grantors were therefore, under the circumstances of the case, competent evidence to show title. The court, it will be observed, were not called upon to charge that these parol declarations, in themselves, could not establish a title; but that, unless the plaintiffs first proved their title to the premises in question by other evidence, the parol declarations were no evidence upon the question of title. Such a charge, under the facts of the case, would clearly have been erroneous. Upon this point the charge of the judge is unexceptionable.

2. It is insisted that the judge erred in refusing to charge the jury " that, if Ruliff Van Wagoner gave Abraham Ackerman the privilege of building a dock upon his land, upon Ackerman's paying one pound of tea a year for the use of it, and of having the privilege of landing hay and wood there, without limitation of time, an entry under such an agreement and permanent improvements, constituted an adverse possession for the freehold, subject to a fee farm rent, and the servitude and twenty years' possession under such entry, will bar the right of action, except for the rent and servitude."

The law is settled that, if a party enter into possession of land under a contract to purchase, and pay the purchase money, his possession is adverse, and, if continued twenty years, will be a bar to the legal title of the vendor. *Angell on Lim.*, ch. 31, § 26 ; *Barker* v. *Salmon*, 2 *Metc.* 32 ; *Brown* v. *King*, 5 *Metc.* 173 ; *The Society, &c.,* v. *Pawlet*, 4 *Peters* 506.

But the contract proved upon the trial in this cause was a mere parol lease, which could be valid only for three

years.  If it purported to be for a longer period, it created a
mere tenancy at will.  *Nix Dig.* 306, § 9.  How, then, could
the occupancy of the land, by virtue of such contract, be an
adverse possession for the freehold ?  And how could such
an estate be subject to a fee farm rent, which issues only out
of an estate in fee simple ?  Nor is it perceived how the
mere improvement to be made by the tenant (which is a
common condition in a lease for years) could convert his ten-
ancy into a freehold estate.  But, whatever questions might
have arisen as to the nature of the tenancy between Van
Wagoner and Ackerman, as his tenant, whatever rights Ack-
erman might have had at law or in equity against Van
Wagoner, as his landlord, they were not of a nature to impair
the relation of landlord and tenant, or to convert the interest
of Ackerman into a freehold estate. · Nor can the rights of
Ackerman, as tenant, under the contract, whatever they may
have been, afford to a party who claims by title adverse to
the landlord, and denies the existence of the tenancy, any
ground of defence to the plaintiff's action.

The motion for a new trial must be denied.